IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| ADRIANNE LYNCH DOUGLAS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 6:11-cv-00043 |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

### REPORT AND RECOMMENDATION

Plaintiff Adrianne Douglas ("Douglas") filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), finding her not disabled and therefore ineligible for both supplemental security income, ("SSI"), and disability insurance benefits, ("DIB"), under the Social Security Act, ("Act"), 42 U.S.C. §§ 1614(a)(3)(A); 1381-1383f.

Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have fully briefed and argued all issues, and the case is now ripe for decision. I have carefully reviewed the administrative record, the legal memoranda and argument of counsel and the applicable law, and conclude that substantial evidence supports the ALJ's decision. As such, I **RECOMMEND DENYING** Douglas's motion for summary judgment (Dkt. # 10), and **GRANTING** the Commissioner's motion for summary judgment (Dkt. # 11).

### STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). This court limits its review to a determination of whether substantial evidence exists to

support the Commissioner's conclusion that Douglas failed to demonstrate that she was disabled under the Act. Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). If such substantial evidence exists, the final decision of the Commissioner must be affirmed. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Douglas bears the burden of proving that she is disabled within the meaning of the Act. *English v. Shalala*, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)(2006)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education and work experience. *See* 42 U.S.C. §§ 423(d)(2) and 1382c(a)(3)(B).

The Commissioner uses a five-step process to evaluate a disability claim. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. *Heckler v. Campbell*, 461 U.S. 458, 460-462 (1983); *Johnson v. Barnhart*, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (*citing* 20 C.F.R. § 404.1520). The

inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at step five to establish that the claimant maintains the Residual Functioning Capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); *Taylor v. Weinberger*, 512 F.2d 664, 666 (4th Cir. 1975).

## STATEMENT OF FACTS

### Social and Vocational History

Douglas was born on April 21, 1971 and (Administrative Record, hereinafter "R." 49) and is considered a younger individual under the Act. 20 C.F.R. §§ 404.1563(c), 416.963(c)(2011). Douglas graduated from high school and has a certified nursing assistant (CNA) degree. (R. 52.) Douglas previously worked as a home health care assistant from 1994 through 2002, and as a CNA from 2003 through 2009, which was semi-skilled, medium work. (R. 92.) Douglas left her job as a CNA voluntarily due to her alleged physical limitations. (R. 58.)

Douglas reported in her application for benefits that she had significant limitations, and needs help to dress herself, to get out of the bathtub, to brush her hair, and to use the bathroom. (R. 320.) Douglas claims that she needs reminders to get out of bed, and forgets where she places things. (R. 321-3.) She prepares her own meals, but forgets to turn off the stove. She can do small loads of laundry and wash dishes, but needs to stop and rest. Each day, Douglas will go outside, but she uses a cane, and drives a car only when she isn't feeling sick. She shops once a

3

week for food, clothing and personal items. (R. 322.) With regard to social functioning, Douglas reported that when she is in pain she takes it out on others. (R. 324.) Douglas claims that she has a short attention span and can pay attention for 15-30 minutes, but can finish what she starts and follow spoken directions. She also reported that she gets along well with authority, but cannot handle stress or changes in routine. (R. 324-25.)

## Claim History

On July 8, 2009, Douglas protectively filed for SSI and DIB, claiming that her disability began on August 21, 2009, due to lupus, carpal tunnel syndrome, high blood pressure, and depression.[1] (R. 159, 236.) The state agency denied her claim at the initial and reconsideration levels of administrative review. (R. 168, 184, 191.) On April 5, 2011, ALJ Mark A. O'Hara held a hearing to consider Douglas's disability claim (R. 40.) Douglas was represented by counsel at the hearing, which included testimony from Douglas and vocational expert Andrew Beale. (R. 40.)

On May 26, 2011, the ALJ entered his decision denying Douglas's claims for DIB and SSI. (R. 15.) The ALJ found that Douglas's obesity, mixed connective tissue disease/lupus, probable fibromyalgia, affective disorder, anxiety disorder and substance abuse disorder were severe impairments. The ALJ found that Douglas's hypertension and chronic cough were non-severe impairments. Considering these impairments, the ALJ found that Douglas retained the RFC to perform light work, limited to tasks that involve no more than occasional climbing, balancing, stooping, kneeling, crouching, or crawling. She must avoid exposure to extreme heat, wetness, humidity, noise, vibration, respiratory irritants and workplace hazards. She is also limited to simple, unskilled, low-stress work that involves things more than people. (R. 20.) The

---
[1] Douglas initially alleged that her disability began on March 31, 2009, and later amended the onset date to August 21, 2009. (R. 159, 236, 243.)

4

ALJ determined that Douglas is unable to perform her past relevant work. However, given the evidence obtained from the vocational expert, the ALJ found that Douglas can perform work, such as stock checker, laundry sorter, and non-USPS mail clerk, which exists in significant numbers in the national economy. (R. 33.) On August 24, 2011, the Appeals Council denied Douglas's request for review, and this appeal followed. (R. 1-10.)

## ANALYSIS

### Listing §§ 14.02 and 14.06

On June 28, 2012, this court heard oral argument on the parties' cross motions for summary judgment. At that time, Douglas argued, for the first time, that her impairments meet Listings §§ 1.00, 11.00, 14.02 and 14.06. The Commissioner objected to the argument, because it was not raised and addressed in the parties' opening briefs. The court permitted the parties to submit supplemental briefs addressing whether Douglas has an impairment that meets Listings §§ 1.00, 11.00, 14.02 or 14.06, and whether Douglas waived the argument by failing to raise it earlier.[2] The parties submitted supplemental briefs, and this issue is now ripe for decision.

It is well established in the 4th Circuit that arguments not specifically raised and addressed in the opening brief at the appellate level are deemed waived. *See Cavallo v. Star Enterprise,* 100 F.3d 1150, 1152 n. 2 (4th Cir. 1996). However, there do not appear to be any cases applying this rule to oral argument in appeals from the Social Security Administration. In this case, while Douglas's arguments with regard to the Listings may well be waived, even considering the merits of the arguments, the court finds that the Commissioner's decision was supported by substantial evidence.

---

[2] Douglas's supplemental brief (Dkt. # 16) did not address Listings §§ 1.00 and 11.00; thus those Listings will not be considered by the court.

5

The Listings describe limited circumstances in which a claimant's impairment is so severe that the individual is categorically deemed disabled without further inquiry. Douglas has the burden of proving that her impairments meet the criteria of the Listing. *English v. Shalala*, 10 F.3d 1080, 1082 (4th Cir. 1993). To meet the criteria for Listing § 14.02A for systemic lupus erythematosus (SLE), Douglas must have (1) involvement of two or more organs/body systems,[3] with (2) one of the organs/body systems involved to at least a moderate level of severity; and (3) at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss.) 20 C.F.R. Pt. 404, Subpt. P, App.1, § 14.02A.

To meet Listing § 14.02B for SLE, Douglas must have (1) repeated manifestations of SLE, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level: limitations in activities of daily living, limitation in maintaining social functioning, limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence or pace.[4] 20 C.F.R. Pt. 404, Subpt. P, App.1, § 14.02B. The requirements for Listing § 14.06 (the listing for undifferentiated and mixed connective tissue disease) are identical to the requirements for § 14.02, except that for § 14.06B, Douglas has to prove repeated manifestations of undifferentiated and mixed connective tissue disease (rather than repeated manifestations of SLE). 20 C.F.R. Pt. 404, Subpt. P, App.1, § 14.06.

There is no question that Douglas suffers from occasional flare ups of her mixed connective tissue disease/SLE, but the record does not establish that she has had "involvement of

---

[3] "Major organ or body system involvement can include: Respiratory (pleuritis, pneumonitis), cardiovascular (endocarditis, myocarditis, pericarditis, vasculitis), renal (glomerulonephritis), hematologic (anemia, leucopenia, thrombocytopenia), skin (photosensitivity), neurologic (seizures), mental (anxiety, fluctuating cognition ('lupus fog'), mood disorders, organic brain syndrome, psychosis), or immune system disorders (inflammatory arthritis)." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 14.00D(1)(a).

[4] "Marked level" is defined as "more than moderate, but less than extreme." 20 C.F.R. Pt. 404, Subpt. P, App.1, §14.00I(5).

6

two or more organs/body systems" or "repeated manifestations," with "at least two of the constitutional symptoms or signs." In general, Douglas's treatment has been fairly routine and conservative, and her mixed connective tissue disease appears to be responding well to treatment. By February 2011, Douglas's physical symptoms appeared to be well-controlled with medication and aquatherapy. (R. 846.) Further, Douglas's treatment records do not reflect the constitutional symptoms of severe fatigue, fever, malaise, or involuntary weight loss, as those terms are defined by the regulations.[5] 20 C.F.R. Pt. 404, Subpt. P, App.1, §14.00C. Douglas claims that she consistently suffered from severe pain; however, her subjective allegations are not supported by her treatment records. Douglas's physical findings on exam show, at most, some tenderness to palpation. Otherwise, Douglas was not in acute distress, and generally had normal strength, normal range of motion in her arms and legs, and a normal gait.[6] (R. 596, 609, 650, 652-53, 666-67, 669-70, 714, 716, 726, 731, 736, 756, 791, 801, 810, 838, 843.) Also, as set forth more fully below, there is substantial evidence to support the ALJ's finding that Douglas's subjective allegations are only partially credible. Accordingly, the court finds substantial evidence to support the ALJ's finding that Douglas does not meet all the criteria of Listings §§ 14.02 and 14.06.

## Credibility

Douglas argues that the ALJ erred by failing to assign substantial credibility to Douglas's testimony that she suffered from severe, disabling pain. The ALJ determines the facts and resolves inconsistencies between a claimant's alleged impairments and her ability to work. *See Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). Douglas claims that she suffers from constant

---

[5] Malaise is defined as "frequent feelings of illness, bodily discomfort, or lack of well-being that result in significantly reduced physical activity or mental function." 20 C.F.R. Pt. 404, Subpt. P, App.1, §14.00C(2).
[6] Douglas was observed using a cane on two occasions. (R. 670, 736). Otherwise there is no mention in her treatment records that she required assistance to walk, and her gait is observed to be normal.

7

pain which prevents her from dressing herself, raising her arms to feed herself, and getting up from the tub or toilet without assistance. (R. 320.) At the administrative hearing, Douglas testified that she has pain in her muscles, bones and skin; and that due to her pain she can only lift 5 pounds, stand for 5-10 minutes, and walk very short distances. (R. 59-65.)

Douglas's subjective allegations of disabling symptoms are not conclusive. Rather, the ALJ must examine all of the evidence, including the objective medical record, and determine whether Douglas met her burden of proving that she suffers from an underlying impairment which is reasonably expected to produce her claimed symptoms. *Craig v. Chater*, 76 F.3d 585, 592-93 (4th Cir. 1996). The ALJ then must evaluate the intensity and persistence of the claimed symptoms and their effect upon Douglas's ability to work. *Id*. at 594-95.

A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. *See Shively v. Heckler*, 739 F.2d 987, 989-90 (4th Cir. 1984)(finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.)

The ALJ determined that Douglas's testimony concerning the limiting effects of her pain were only partially credible because they were not supported by her generally routine, conservative and unremarkable treatment, the physical findings on exam, and her noncompliance with taking prescribed medications. (R. 29.) Douglas argues that the medical records contain extensive evidence of her complaints of severe pain. Douglas further objects to the ALJ's statement that her complaints of pain are not supported by "imagery evidence," noting that fibromyalgia is a condition that does not show up on imagery evidence.

8

Douglas is correct that fibromyalgia is a condition that does not appear on diagnostic image exams. Additionally, Douglas's treating physicians consistently note that her tenderness was in a distribution consistent with fibromyalgia. Tenderness alone, however, does not rise to the level of pain claimed by Douglas in her report of daily activities or hearing testimony. Although the medical records document Douglas's fibromyalgia, they do not document, nor do they support, her complaints of disabling pain.

Douglas's physical findings on exam do not reflect a debilitating condition, but instead generally show tenderness to palpation and limited restrictions on movement. (R. 596, 609, 650, 652-53, 666-67, 669-70, 714, 716, 726, 731, 736, 756, 791, 801, 810, 838, 843.) Douglas's claims that she cannot raise her arms up to feed herself, or get up from the toilet without assistance, are not supported by her medical records. On October 15, 2010, Mark McGuire, P.A. noted mild tenderness in a pattern typical for fibromyalgia, otherwise Douglas's bilateral upper and lower musculoskeletal exam was normal. (R. 714.) On February 16, 2011, Dr. Rome noted that Douglas's pain symptoms are "well-controlled." (R. 846.) On February 24, 2011, Dr. Lucar noted that Douglas "remained relatively stable," and that "her arthalgias flare up intermittently and her only treatment is Mobic." (R. 841.)

Douglas's credibility is also undermined by her history of continuing to smoke (R. 670, 838), and drink (R. 639, 653, 668, 670, 800, 806, 820, 835) against the recommendation of her physicians. Further, Douglas's failure to fill prescription medications on at least three occasions suggests that her symptoms were not as severe as alleged. (R. 594, 651-52, 716, 724.)

Given Douglas's treatment record and diagnostic tests; her generally routine, conservative treatment; evidence that her mixed connective tissue disease was stable; her failure to comply

9

with prescribed medications; and her reported daily activities, there was substantial evidence to support the ALJ's finding that Douglas's subjective complaints were not entirely credible.

## **Mental Impairments**

Douglas argues that the ALJ erred by finding that her impairments of depression, panic disorder and bipolar disorder were not severe, and that the ALJ minimized the limitations caused by Douglas's mental impairments. The ALJ found that Douglas's affective disorder and anxiety disorder were severe impairments. Depression and bipolar disorders are types of affective disorders. Likewise, panic disorder is a type of anxiety disorder. The only impairments that the ALJ found to be non-severe were Douglas's hypertension and chronic cough. Consequently, although it is not explicitly stated, it appears that the ALJ included Douglas's depression, bipolar disorder and panic disorders in the categories of affective and anxiety disorders, which he classified as severe. The ALJ considered Douglas's mental disorders throughout his opinion, and specifically accounts for the limitations caused by her mental disorders by limiting her RFC to unskilled, simple, low-stress work.

Although Douglas suffered from severe mental impairments, her medical records show that her symptoms improved over time with medication, therapy group sessions and relaxation techniques. On August 19, 2009, Douglas was admitted to the hospital overnight for an unintentional medication overdose. She was diagnosed with depression and referred for counseling. (R. 393.) On August 27, 2009, Douglas again overdosed, and was diagnosed as depressive and actively suicidal. (R. 424.) She was transferred to an inpatient psychiatric facility for approximately a week. (R. 520.) When released from the hospital in August 2009, Douglas's

Global Assessment of Functioning scores were 40 and 50.[7] (R. 521, 566, 643.)  Douglas saw a counselor for depression three times during September and October of 2009 (R. 558-66).  In June 2010, Douglas began treatment with psychiatrists about once a month for depression.  (R. 638-44, 658-60, 660-66, 815-20, 826-30, 832-35.)  In October 2010, Douglas began seeing a psychologist once a month. (R. 661-65, 794-97, 811-14, 829-31, 853-56.)  Beginning in October 2010, Douglas's mental health specialists consistently assessed Douglas with, at most, moderate symptoms or limitations.  In October 2010, Douglas's scores rose to 60, with a highest GAF score of 70, indicating mild symptoms or limitations. (R. 665, 797, 814, 830, 856.)  In January 2010, state agency psychologist Julie Jennings, Ph.D., found that Douglas could perform simple, unskilled, non-stressful work. (R. 110.)

     Overall, Douglas's mental status examinations showed that she was depressed, but had appropriate behavior, normal perceptions, good attention, sometimes pressured speech, good eye contact, good judgment and impulse control. (R. 564, 638-40, 643, 660, 663-4, 795, 805-06, 812-13, 819-20, 826, 828-29, 834, 853-54.)  Further, the ALJ found that Douglas reported only mild restrictions in daily activities due to her mental impairments.  She can prepare sandwiches and frozen dinners, although she needs someone to remind her to turn off the oven.  (R. 321.)  She cares for a cat, goes outside almost every day and drives a car to the store. (R. 322.)

---

[7] The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders Fourth Edition-Text Revision, 34 (American Psychiatric Association 2000). A GAF of 41-50 indicates "serious symptoms…or any serious impairment to social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  A GAF of 51-60 indicates that the individual has moderate symptoms or moderate difficulties in functioning (e.g. few friends, conflicts with peers or co-workers).  A GAF of 61-70 indicates some mild symptoms or some difficulty win social occupational or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships. *Id.* The GAF score is intended to assist mental health professionals make treatment decisions, but is not determinative of the severity of an individual's disability.  See <u>Allen v. Comm'r</u>, 2010 WL 1142031, at *5-6 (E.D.Va. 2010); <u>Dawson v. Barnhart</u>, 2006 WL 982005, at *2 (W.D.Va. 2006).

The ALJ also found that Douglas has moderate difficulties in social functioning and concentration, persistence and pace. Douglas reported general problems getting along with others, and that she did not like to be around a lot of people. (R. 324.) She spent time with others once a week and moved back and forth between her mother and boyfriend. (R. 319, 323.) Douglas reported that she can pay attention for 15-30 minutes, that she can finish what she starts and follow spoken instructions. (R. 324.) The medical records show occasional complaints of difficulty with concentration or focus. (R. 640, 833.)

The ALJ considered Douglas's depression, panic disorder and bipolar disorder in his opinion, and specifically accounted for the functional limitations caused by Douglas's mental disorders by limiting her RFC to unskilled, simple, low-stress work. Given Douglas's mental status examinations, her GAF scores, and the opinion of Dr. Jennings, there is substantial evidence to support the ALJ's finding that Douglas's limitations do not prevent her from performing simple, unskilled, low stress work.

## CONCLUSION

It is not the province of the court to make a disability determination. The court's role is limited to determining whether the Commissioner's decision is supported by substantial evidence, and in this case, substantial evidence supports the ALJ's opinion. In recommending that the final decision of the Commissioner be affirmed, I do not suggest that Douglas is totally free from any distress. The objective medical record simply fails to document the existence of any physical and/or mental conditions which would reasonably be expected to result in total disability from all forms of substantial gainful employment. It appears that the ALJ properly considered all of the objective and subjective evidence in adjudicating Douglas's claim for

12

benefits and in determining that her physical and mental impairments would not prevent her from performing any work. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. Accordingly, I conclude that the Commissioner's decision must be affirmed and the defendant's motion for summary judgment **GRANTED**; and Douglas's motion for summary judgment **DENIED**.

      The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

            Enter: November 7, 2012

            */s/ Robert S. Ballou*

            Robert S. Ballou
            United States Magistrate Judge